Please call the next case. Case number 22-2164 from the Eastern District of Arkansas, Anthony Lamar v. Dexter Payne Good morning, your honors. Before we begin, Steve Alanya on behalf of the appellant Anthony Lamar, and it's my pleasure to introduce the law students appearing under this court's rule 46B. With me at the podium is Derek Froman, who will be presenting argument this morning, and also Allison McDonald and Elizabeth Randall. Well, you're welcome, Mr. Froman, and we appreciate your assistance in providing argument on a pro se briefed case. Thank you. May it please the court. The district court erred in granting the state's motion for summary First, the summary judgment record contains evidence from which a reasonable trier of fact could find for Mr. Lamar on each of his retaliation claims. And second, the district court failed to recognize those material factual disputes because it purported to apply the sum evidence standard. But that application of the sum evidence standard here was legally erroneous. Therefore, Mr. Lamar respectfully requests that this court vacate the judgment below and remand for further proceedings. Mr. Lamar raises a number of distinct retaliation claims here, but the district court's error is most evident in its treatment of Mr. Lamar's retaliatory discipline claim against Defendant Lindsay. On August 8th, 2017, Defendant Lindsay, excuse me, Mr. Lamar filed a formal grievance against Defendant Lindsay pursuant to established prison policies. And only nine days after Mr. Lamar filed his grievance against Defendant Lindsay, she responded with a spate of disciplinary charges against him. Now, ultimately, the hearing officer within the prison dismissed all of these charges against Mr. Lamar, crucially without finding him guilty of violating prison standards. Something confuses me about this case. I'm not, I'm not aware of a, Superintendent V. Hill and the sum, the sum evidence principle derives from due process issues. Absolutely, your honor. We don't have that here. That's absolutely correct. And so this, this is a charge, and I'm not aware of any retaliation claim where there was a charge and, and no proof. Well, your honor, the, the record here does demonstrate multiple pieces of evidence regarding the retaliatory motive. But why, why does, why does this a, why does this get to a retaliate, a First Amendment retaliation inquiry? Your honor, because Mr. Lamar filed a formal grievance, which of course this court has just a few days ago, that the grievance that Mr. Lamar filed here is a First Amendment constitutionally protected activity. That has been clear as this court recognized in Santiago against Blair for over 30 years. And so it's very clear that when a charging officer like defendant Lindsay here files disciplinary charges because of Mr. Lamar's formal grievance here, that itself. But the district court never got to the because. That is absolutely correct, your honor. And it did not do so. It seems to me that the critical line in Orobao is no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform. That is correct. We never get to that. Your honor, that is correct that the district court did not address any of the evidence on this record. And it is correct that Orobao states that, that conclusion of law regarding some evidence standard. But what is crucial when applying some evidence standard here is that an impartial decision maker at the prison administrative level has found an inmate guilty of a rule violation. Oh, no, no. What's the difference between charge and conviction? Your honor, because as you mentioned, the some evidence standard is founded in the notions of due process. The fact is that within the prison, the prison has the ability to establish certain and Mr. Lamar was entitled to go before a hearing, which he did at this case. But we never, we never get there. I mean, he, there was a charge and it was resolved. And now all of a sudden we have it. We have a damage retaliation action. I don't get it. Your honor, it's because that the charge here wasn't actually resolved in terms of finding Mr. Lamar guilty or not guilty. But it was dismissed on wholly procedural grounds because actually defendant failed to include any starter in dates in her investigation, which is actually just yet another piece of evidence. Which is trivial. I mean, it's trivial in terms of the constitutional issues. That is correct, your honor. But because Mr. Lamar was not found guilty of violating a prison rule here, the district court does not have a license with regard to the summary judgment posture in order to make an independent facts finding assessment. What's your best case for this, this retaliatory, First Amendment retaliation context? Your honor, we haven't found anything. Your honor, on the facts of this case, Hartsfield, or excuse me, Haynes against Stevenson presents very similar facts. Of course, that was not a summary judgment case. But with regard to the evidence that was before the court in Haynes against Stevenson, we have very similar evidence here showing retaliatory motive. But as for the case that would be most applicable on the law, Hartsfield against Nichols itself says from this court that a charging officer's report itself could be some evidence supporting a disciplinary violation. But that disciplinary violation, and I quote, must be found by an impartial decision maker. And as your honor mentioned. Was that a First Amendment case? That sounds like a due process case. Your honor, there was. It was a First Amendment case. The inmate in Haynes against Stevenson had filed a formal grievance against the charging officer in that case. And as your honor mentioned. What was the result on the First Amendment retaliation? These cases get all mixed up. Your honor, with regard to Haynes against Stevenson, this court actually affirmed to the district court and allowed Mr. or allowed the inmate's claim in that case to succeed. And he was awarded damages. So the evidence there. So jury verdict for the plaintiff? Yes, your honor. Haynes. You know, that's not here. That is correct, your honor. But because we're on summary judgment here. And because Hartsfield. I'm talking I'm more. I am at Hartsfield and I don't. What was the procedural posture there? Certainly are. Well, Hartsfield against Nichols presented a similar situation here where we're on summary judgment posture. And there an inmate was actually found guilty. He was determined to be guilty of violating a prison rule by the prison administrative official, by the disciplinary authority. They are charged with hearing the disciplinary charges. And Hartsfield, in that case, again, filed formal grievance here, which is, as this court has recognized, is a constitutionally protected activity. Now, the snow. Now, wait. I get mixed there. There are two. You just talked about two proceedings and I didn't get the sequence. He was found guilty and then he filed. Yes, your honor. He was he was found guilty of this case. Yeah, that's absolutely correct, your honor. Mr. Lamar was never found guilty of violating a prison rule in this case. The disciplinary hearing officer here who heard Mr. Lamar's charges dismissed them on procedural grounds. And so in order for the state to claim that they can dispose of this retaliatory discipline claim as a matter of law, they have to necessarily show Mr. Lamar actually violated a prison rule. And because of this court's decision. What case says that? Your honor, this court's decision in Hartsfield against Nichols clearly says that the impartial decision maker at the prison administrative level must be the body to find that the inmate violated a prison rule. The district court here on summary judgment does not have a license to use the summary judge or to use the some evidence standard to engage in independent fact finding. So while the state does say that there was evidence, by the way, taking four years after the fact of all of this conduct, which is minimally probative in itself. The fact is that Mr. Lamar's disciplinary charges were never imposed. He was never actually found guilty of violating a prison rule. And as this court has held in Hartsfield, as it actually even noted in Oroba, where the inmate there was found guilty by a prison disciplinary authority, again violating a prison rule, that the two prerequisites that must apply in order for the state to take advantage of the some evidence standard here are, is the fact that a prison disciplinary authority, whether a body or whatever similar such situated prison authority, has actually found the inmate guilty of violating a prison rule, because that actually gives the district court something to review. Of course, the some evidence standard is merely a standard which allows the district court to review the sufficiency of the prison administrative findings below. So if there's no So if there's a reasonable basis to make a charge, your client gets a jury trial on whether lurking behind the reasonable suspicion was an anti-grievance motivation. Yes, Your Honor. That's your position. He would if he was never found guilty of violating a prison rule. It doesn't matter. I mean, making a charge is different than convicting. That is true, Your Honor. Making a charge is, I mean, I don't understand why she gets damages against her for just making a charge that is never found to be without arguable probable cause. Well, Your Honor, as this Court has recognized in Sprouse v. Babcock and Dixon v. Brown, just the mere filing of disciplinary charges itself, regardless of whether or not the prisoner is actually punished eventually or found guilty, is sufficient in and of itself. There's order broadcast great doubt on how much of Sprouse remains. It was very early in these cases. That is correct, Your Honor. But I believe that proposition of law, the fact that the mere filing of disciplinary charges against an inmate, insofar as an inmate can show that those are retaliatory in response to his filing of a constitutionally protected grievance, that is sufficient to make out a claim of retaliatory discipline under this Court's precedence. And with regard to the retaliatory motive here— What about the adverse interest, adverse impact? Is that an element? That is, Your Honor, of Mr. Lamar's other retaliation claims that he brings here. So Mr. Lamar, of course, has the distinct— Not the charge? Mr. Lamar has a retaliatory—excuse me, First Amendment retaliation— What was the adverse result of this—Lindsey's charge? Your Honor, the mere filing of the disciplinary charges itself can satisfy that second element that you mentioned. Now you're back to Babcock? Sprouse and Babcock in Dixon v. Brown, yes, Your Honor. That is correct. And what against Brown? Dixon v. Brown, where this Court held that the mere filing of disciplinary charges— Well, that was pre—old cases. That is correct, Your Honor. But it still remains that the district court can't use the sum evidence standard to engage in some sort of independent facts finding. The district court essentially took the State's evidence from Mr. Lamar's deposition here and concluded that he had violated a prison rule. But I thought his—I thought his admissions at the time— No, Your Honor. That's actually not correct. —showed that he knew he was—he knew that he was up against it against—versus the rules. Your Honor, actually, Mr. Lamar had never admitted contemporaneously to the prison proceedings that he had violated a prison rule or— I didn't say he admitted violation. He admitted that that's what he was doing. It is true, Your Honor, that Mr. Lamar was— He was—he was trying to get a—he was trying to get a class action against—against the prison officials. It is true, Your— By—and whether he used the computer or his cousin or what, that wasn't known at the time. But I thought he made—I thought he made some admissions at the time. But, yeah, that's what I was doing. Your Honor, well, that would go to the first element of these other First Amendment retaliation claims, but— I think it goes to this one. Your Honor, the first element with regard to the— Lindsay. I'm—I'm concerned about Lindsay. The rest of them, I don't know. Your Honor, with regard to the Lindsay claim, the fact that he filed a formal grievance against Defendant Lindsay on August 8th completely satisfies that first element of the claim. That is undisputedly a First Amendment-protected activity. And if there are no further questions from the Court, I will observe the remainder of my time. Mr. Middlebrooks. Morning, Judges. May it please the Court. Mr. Lamar forged a fake Arkansas Department of Corrections memorandum with fake Arkansas Department of Corrections letterhead, and he was not permitted to do that. He was disciplined because— Wait, wait, wait. When was that known? When was that known? I think that it's been apparent from the beginning. On the memorandum, it has Mr. Lamar's name at the top. What was known to Lindsay when she made the charge? Um, well, Your Honor, I think the, uh, whenever she wrote the charge, at the time, she had a disciplinary, or she had a memorandum with Mr. Lamar's name at the top and the bottom. He has openly admitted throughout the process to writing that memorandum, and she admittedly did not know about the, uh, his brother writing it and then sending it through, but she knew that it was typed and that he had multiple copies of it. And I think it's a reasonable, uh, inference to make in a prison context that he had done that through the library, where that's the only place that the, uh, computers are located. Well, if the, uh, there's something in the briefs about the prison, the prison librarian went ahead and made the copies for him. That's correct, Judge. So now why shouldn't Lindsay look into that before she files the charge? And, Your Honor, I can't say whether or not she looked into that or how extensively. The record doesn't really, um, provide enough information. Well, yeah, that's the trouble with it. We don't have, we don't have the, we don't have a lot of facts developed here, except what, what you're, you, you were able to manufacture, not you personally, after the fact with his deposition. Oh, and, Your Honor. If Lindsay had known everything he said in his deposition, maybe it's a different, different case. And, well, and, Your Honor, I understand where you're coming from with that, but also in this court held that even though, uh, that someone was later expunged, that does not mean that there was not sufficient evidence for the imposition of, uh, punishment at the. Some evidence standard has nothing to do with this case. Oh, sorry. So you saw that mean that Superintendent V. Hill arose out of, of fear of due process class actions, second guessing prison committee rulings. And so you, you don't have a due process claim if, if there's some evidence, uh, sustaining or supporting what the, what the, uh, disciplinary committee did. Has nothing to do with First Amendment retaliation. Judge, I'd respectfully slightly. Well, give me a case that says it does. I think that if you look at, um, it goes to the but-for causation, uh, that we, the court has talked about in, uh, Ponchik v. Bogan. In that case, a federal inmate sued prison officials, alleging that his transfer was done in retaliation for filing, uh, previous lawsuits. And even though they found that, uh, the, his litigation efforts were clearly a factor in his transfer, it was not the but-for cause of his transfer. And I, I think that the some evidence rule applies to that in that. Well, let's have a trial on that then. On whether or not that was the but-for cause? Yeah. I, I don't think that there's any issue that, uh, as far as Mr. Lamar admitting that he circulated this memorandum. And with him. He was found not guilty, right? He was, but what he, his claim against Lindsay is for, um, her writing the disciplinary. And this court has, in multiple other 1983 contexts, found that, you know, an officer's reasonable state can give rise to reasonable, reasonable suspicion. Or in excessive force cases, we don't judge, um, officers with perfect 2020 hindsight bias. This is a retaliation case. Doesn't that make it different? Oh, I understand. I'm just saying that this is a bad motive case. And we have no ruling on motive at the summary judgment stage. How can, how can that survive? I don't think that there needs to be a ruling from the, uh, prison board, uh, or the disciplinary committee on whether or not he actually violated this rule. What, Ms. Lindsay's motive. That's what I'm worried about. And there's this sequence of events give rise to, um, at least suspicion that she filed those charges because they were out to shut down this mass effort to attack their, um, their system. It, so if the. And if that's true, it doesn't matter that she might have had arguable cause or basis to file a charge. It's, it's under First Amendment law, it can be tainted, right? It sounds to me like you're saying that the protected activity was the circulation of the petition, which I would argue he's not allowed. It's not constitutionally protected activity. The protected activity was the grievance. The series of the, not only the grievance that he filed against her, but the grievances he was, he was ginning up. He was trying to recruit everybody in the, in the cell block, so to speak, to do the same. And judge, he wasn't punished for anyone else filing grievances, uh, with regards to his, the circulation of his petition. He was punished for the circulation of the petition itself. But, um. I mean, she wasn't, I missed. She, so how was, how was he punished? I was, well, I mean, the grievance was filed, right? And then, as to, I'm sorry, I think I'm getting lost on the question here. Well, we have no punishment. We have no, we have no punishment here. Well, in that case, there, there wouldn't be. And so we would, we, I'm not sure there, he could prove any damages, probably. In the sense of like a post-adjudication determination of guilt followed by punishment. We have him triggering the disciplinary system. And the question is whether that was triggered with a discriminatory motive. Right. And I understand that question. What the issue is, though, is it has to, he had to have, uh, he has to establish that, but for, um, the grievance that he wrote against Lindsay, that he would not have gotten that disciplinary. And I don't think that under any reasonable jury could find that, given that he is openly admitted to circulating this petition. I don't understand why that's an essential element of a bad motive claim. And I don't think, I don't see any, we, we look for cases like this and we couldn't find any. This is, um, a, a, you know, a classic Superintendent V. Hill due process situation. All of a sudden transferred into First Amendment retaliation. And nobody puts the pieces together. And Judge, it goes to the retaliatory animus. If they can't demonstrate, uh, a causal connection between the alleged protected activity and the alleged retaliatory conduct, then it requires that it should, that he be able to show that it, the, him getting the disciplinary was the but for the cause of the transfer. Okay, but we don't have a, we don't have a causation ruling here that we're not, we're not reviewing a causation decision, are we? Isn't it fair to say that there are facts in the record that could be disputed about causation? I, Your Honor, I, I don't think that, uh, Mr. Lamar created enough evidence to meet proof with proof to create that dispute. Based on the record that the court had, uh, I think that it's pretty clear that he received this disciplinary. And if that's the case, then he has no retaliation claim. But what activity? The circulation. Trying to rouse all the fellow, fellow inmates to attack the grievance system. That's correct, Judge. He circulated this. Yeah. Memorandum. And, and I don't, I, I doubt that there are too many, uh, correction officials who wouldn't stomp on that any way they could. Yes, sir. It, does the use of the, where does the, the use of the, uh, prison letterhead come into play here? Or does it have a, um, was that ever mentioned by anybody as, uh, a, a reason for proceedings against Mr. Lamar? I think that that goes towards the, um, wetting or circulating a petition that poses a threat to the security of the facility. Where's the evidence of the threat to security? I, I think that there are three potential threats. Potential. Let's see, where's the evidence? If you can cite to the record where there's evidence of, I mean, we, we can read other cases and other cases have evidence in the record of a security threat, right? And I, what I'm wondering is, do we have that here? And, Your Honor, I think that, that question is, um, misconstruing the, what's required in this. The, the evidence that Officer Lindsay had when she wrote the disciplinary is what's going towards whether or not there was a security threat. Not the, uh, summary judgment record. I think that there are. Where do we, where do we look in the evidence for what, what Lindsay knew when she wrote the disciplinary? I think that you can look at the, uh, memorandum that he circulated itself. Who, who circulated? That Mr. Lamar circulated. We draw our own conclusions as prison experts that we are, that that posed a threat in this particular facility. And, Your Honor, I. So the problem we have is like Judge Loken has said, you know, we don't have a record here. We don't have findings on these sorts of issues because of the way the case developed. And what I'm essentially trying to say is, I don't think that the court has to find that it actually posed a threat to security. I just think that there had to be some evidence, the petition itself, that, uh, Lindsay could conclude violated some prison rules. I don't know that this court or, uh, the district court has to find that the. So the whole security issue that you mentioned is irrelevant. Uh, I, I think it's relevant to her, uh, thought process as to why she. Which we have no evidence on. There's no evidence in the record about her thought process. I understand. And you're asking us to draw conclusions about what her thought process was. And I don't mean to be singling you out, but I find the case frustrating and baffling because you're asking us to do something and you can't point me in the record for a basis if I have to sit down and write this for a citation. And that's, so what do we do? What do I do? I'm not going to speak for the other members of the panel. They, they may know what to do with it. But that's my frustration with the case. And I don't, I would put, I would put it a different way. Well, a similar way. It seems to me the question is what happened here that makes Lindsay's true motivation irrelevant to a First Amendment retaliation claim? I would. Why can we, what is there here that allows us to over, to simply put aside and, and basically say, well, if even if she was anti-grievance filing, that's irrelevant. I think that that is the circulation of the petition itself, which Lamar admits to doing. She, uh, had overwhelming evidence that he was the person who had circulated it and wrote him a disciplinary charge based on him circulating that petition. So an objective officer might have had enough, but we don't know what Lindsay's motivation was? Is that the argument? No, your, Judge, the argument is that she had a basis to write this based on him circulating that petition. There's nothing in the record that would indicate that the reason she wrote it was because she was mad about receiving a grievance. It's just that he wrote this. Yeah, but that's, whose burden of proof was that? Um, Judge, I, I mean, at summary judgment, it would be the defendant's, but. But certainly there are allegations in the, in the underlying documents that suggest that, right? And Judge, I would actually say that some of those allegations from Mr. Lamar are inconsistent. If you look at. It was a factual dispute, okay. I'm just saying as to what his actual claims are. If you look at, um, docket entry, um, 117. Let me see. Oh, sorry, docket entry 111 at page 9. He says, uh, from the beginning defendants Lindsay and Gibson both knew that Mr. Lamar requested every inmate who was negatively affected by mail policy AD 1723 to file grievances and affidavits against said mail policy. And that, um, he's being, um, docket entry 116.22, um, that there's evidence that I'm being retaliatory disciplined via this disciplinary report for exercising my First Amendment right to challenge a prison policy that violates the free speech. You gotta speak up. I'm sorry. I'm sorry. I'm looking down and reading. Always a problem. Yes, sir. Uh, violates my First Amendment right to challenge a prison policy that violates the free speech clause of the First Amendment and for encouraging inmates to file grievances against this policy. It, at least in several other parts of the record, he has indicated that he thought, at least at one point, that the retaliatory, um, motive from Lindsay was the fact that he circulated this petition, not that he wrote a grievance. So at the time he thought that that was a violation of his constitutional rights. Arguably. And your, your suggestion is because the district court found that that's not an unconstitutional policy, what, there's no factual dispute about that? It's, or how does that play out in your mind? The, so the district court did find that the, um, the policy was not unconstitutional, but it also found that he, um, was, circulating a petition was not protected activity. So that gets rid of the claims against, uh, Gibson, Shipman, and Washington, which leaves only his claim against Lindsay, because his claim against. Which is the one we're, we're struggling, or at least I'm struggling. I understand. Uh, and his claim against Lindsay is because, um, she wrote him the disciplinary. At the time that she wrote the disciplinary, there was a substantial amount of evidence that he was the person who circulated that memorandum. But I'm out of time, unless the court has any other questions. Do you think the Beard case is relevant? I am not familiar with that case, Judge. The one that was just circulated two days ago. Oh, sorry, I forgot the name of that one. I, um, did not find it to be terribly relevant. It seemed to be relevant as to, as far as temporal proximity, but that's already been pretty well established, I think. Thank you, Judge. For rebuttal, Mr. Froman. Judge Kovas, you asked opposing counsel whether there are at least some factual disputes on this record. And the answer to that question is absolutely yes. As the district court recognized in document number 117 in the summary judgment record, specifically at page 10, I quote, with at least respect to two out of the four charges, the record is silent on why defendant Lindsay charged Mr. Lamar with failing to obey an order of staff or askering slash offering inducement. And so at least with respect to two out of the four charges, there was not any sufficient factual basis at that time for Lindsay to have brought those charges. And like in Haines against Stevenson, where the inmate there had the disciplinary charges brought against him dismissed, and he was never found guilty of violating a prison rule, in that case, the charging officer had violated an express Arkansas Department of Corrections policy, which prohibited him from bringing a disciplinary charge in the first place. And here, in the ADC Inmate Disciplinary Manual, and which is provided in the State's own motion for summary judgment, which is Exhibit 10, on pages 10 and 11, we see that under the Inmate Disciplinary Manual, a major disciplinary form, and I quote, will be completed for major disciplinary reports against an inmate and will include specific details of the rule infraction alleged against the inmate, and at a minimum, the details shall include who, what, when, where, why, and how the charges are being brought. So this case on the facts is very similar to Haines against Stevenson, where the charging officer, Defendant Lindsay here, arguably violated an express Arkansas Department of Corrections regulation, and that itself is strong evidence of a retaliatory motive. And Judge Logan, you also asked opposing counsel whether Beard against Falkenrath is relevant here, and it absolutely is. That case reaffirmed years of this Court's precedent, which shows that temporal proximity in some cases can be sufficient in itself to show retaliation. Usually not. Usually not, Your Honor, but of course it's a strong factor, and it could potentially in some cases, but this case is not limited to temporal proximity alone. There's evidence on this record from which a reasonable trier of facts could find for Mr. Lamar and could find that Defendant Lindsay had a retaliatory motive, and that is all Mr. Lamar needs to show at summary judgment. Thank you. Thank you, counsel. The case has been thoroughly briefed. There's a pending motion on a pro se brief, but the argument's been very helpful, Mr. Froman. You did very nicely. We look forward to seeing you again more in the future, and we will take the case under advisement.